Okay, the Vanna College of Art and Design v. Sportswear, Inc., Ms. Vandegrein, if I'm pronouncing that correctly. Yes, yes, good morning, Your Honor. Good morning. Shall I begin? Yes, please. Thank you. Your Honor, as it pleases the Court, my name is Leslie Vandegrein. I represent Sportswear, Inc., the defendant appellant here. I have a brief introduction. Okay. And then my question is, would you like me to address the standing issue first or the substantive issue first? I certainly would like to hear about standing. This is an unusual judgment. What it appears to me happened here is that a district judge who frequently, when summary judgment is granted, the summary judgment ends up being granted for a defendant, not a plaintiff, but here perhaps forgot that it was the plaintiff who moved for summary judgment. It was cross motions for summary judgment. And granted it without awarding any relief, any damages, attorney's fees, injunctive relief, any relief, any kind of coercive remedy whatsoever, and then said, this case is dismissed. Now, if you grant summary judgment for a defendant, I know you often will just then dismiss the case. But in this context, I'm not sure how your client has been injured by this judgment. You're correct, Your Honor, on what happened in the district court. There are a couple of reasons here why Sportswear still does have Article III standing to appeal. The first is that Sportswear was aggrieved because it did not get the relief it requested in its answer, that is, judgment in its favor on the issue of liability, and the other relief seemed just and proper. As you note, nearly all the cases where standing to appeal is questioned involve a prevailing party or a non-party appealing. It's very odd. It's a rare question that the standing to appeal of the losing party is challenged. We could only find two cases. But if the court dismissed the case, didn't you get what you wanted? No, Your Honor. I mean, you wanted a judgment in your favor that the plaintiff was wrong and not entitled to anything. And effectively, that's what you got. Well, there's reasons that Sportswear is aggrieved here. One is that the district court's order is going to or will likely have issue preclusive effect on Sportswear. And the 11th Circuit has indicated... Excuse me, I didn't understand you, Your Honor. I said how. How will it have issue preclusive effect? Well, for example, if SCAD, if the plaintiff here files a new lawsuit based on its five new trademark registrations, which have the same text, SCAD would surely argue this lower court order has preclusive effect and Sportswear should be collaterally stopped from arguing against the issue. We found two cases written by Judge Posner that were almost identical to these facts in the 7th Circuit. And one is Chase Manhattan Mortgage v. Moore. And that here, summary judgment was granted for defendants without specifying any relief. And although the judgment was, as Judge Posner called it, radically defective, like the one here, in failing to provide any form of relief but still finding in favor, in there, Judge Posner held the defendant was aggrieved because the ruling fixed the defendant's liability. The other case we found in Judge Posner... What is that? What's that citation, counsel? It is 446F3-725 in 2006. And the second case we found very similar also by Judge Posner is Wachovia Bank v. Foster Bank Shares, and that is 457F3-619, where he said a judgment omitting reference to specific relief should be treated as a declaratory judgment. He wrote that a judgment that declares rights but does not order relief is appealable under 28 U.S.C. 1291 as a declaratory judgment. So I think for both of those reasons and also, of course, the informal preclusive effects that will happen for plaintiffs here, because this is not millions of pages we're talking about on the website. It is just 15 or so pages that populate with different data as the customer selects. So it will also be informally preclusive effects of the judgment. I also refer the court to AgriPost, which is the 11th Circuit case, 195F3-1225, and that's not as nearly on point as the two 7th Circuit opinions, but there the 11th Circuit did indicate that a prevailing party even can be aggrieved by a judgment and could have standing to appeal if that party would be subject to that judgment's issued preclusive effects in subsequent litigation. May I move to the substantive matters? Sure. Thank you, Your Honors. A trademark is a property right with boundaries, and the plaintiff here has accused my client of trespassing. But property boundaries can't be extended outwards forever. In the U.S., trademark rights do not confer a right to prohibit the use of a word or word generally. The boundaries are always tethered to actual use in a marketplace and associated with particular goods and services on which they were used. Trademark rights are not created by a piece of paper in a low-level administrative office. This is true in China, but it is not true in the United States. Without boundaries, the trademark claim becomes a right in gross, which is strictly prohibited. I'm going to refer to Savannah College of Art and Design's first opinion as SCAD 1. The SCAD 1 found that without boundaries, a trademark claim becomes a right in gross. Also without boundaries, the trademark becomes a merchandising right, which SCAD 1 made clear is not available under the Lanham Act. Here, the plaintiff is asking for a right in gross with barely any evidence to support his claim. Isn't the real problem here that we are bound by Boston Hockey and the cases in this circuit that have interpreted it? I almost feel like you implicitly are arguing for en banc reconsideration because you recognize that we're bound by this line of cases and we have to apply it here. Is there some way that you think that we can avoid applying Boston Hockey? Boston Hockey, yes, Your Honor. No, there's not a way you can avoid it. This court in SCAD 1 explained how Boston Hockey would apply here. Over many decades, Boston Hockey has been narrowed, and the triggering mechanism language from that case has been written several times that it does not remove the requirement of proving likelihood of confusion in the standard way under the Lanham Act. We are not asking for en banc review of Boston Hockey. I will, at the end, ask for en banc review of the Dieter presumption that I'm going to talk about. This court held in Sovereign Military Hospital that the 11th Circuit should quote, decline to extend the error of Dieter any further than necessary, but extended exactly what the district court did. Not extending requires, first and foremost, not stretching any beneficial presumption beyond the goods and services stated in the registration. The clear language of Section 115B awards any and all presumptions from registration only to the goods and services listed in the registration. Both Sovereign Military and Dieter dealt with nearly identical goods and services, and also other prior cases discussing the incontestability presumption. There's simply no precedent for extending incontestable presumption from the services recited in SCAD's registration to unrelated goods like apparel. If the Dieter presumption is not extended to cover unrelated goods, then the marks here are not entitled to be found strong as extended to the accused apparel goods. Okay, but you recognize... And plaintiff admitted... I'm sorry to interrupt. You recognize that we're bound by Dieter, and I understand that you're seeking en banc reconsideration, but that's something you'll have to seek. I mean, we're bound by it. We can't decide not to apply it, and we can't overturn it ourselves. Yes, Your Honor, but we can decide to not extend it further as the district court did. It also extended Dieter not just once, but twice here. The second stretch it did was backwards in time, because one of plaintiff's registrations did not gain incontestable status until 2010. The defendant is accused of using that mark in 2009, so SCAD should have been required to prove the incontestable status existed before the defendant began printing clothing. But the district court stretched the status, incontestable status, as if it had existed prior to 2009, which it clearly did not. Let me give you an example here. Delta Faucet owns an incontestable registration and has used the Delta mark going way back on plumbing fixtures. The mark is strong for plumbing fixtures, although it's descriptive initially. Delta Airlines is a junior user applying Delta to airline services. Delta Faucet's incontestable registration may meet the validity prong of a trademark lawsuit, but the strength presumption in its registration cannot be extended to anything other than plumbing fixtures for the likelihood of confusion analysis. Can Delta Faucet now go back and say, oh, now we have an incontestable registration for plumbing fixtures, even though we can't prove use on airline services? Isn't that a little bit different, though? I mean, isn't that a little bit different when you look at it? Because Delta Airlines and Delta Faucet, you know, it's not like Delta Airlines is trying to pass off a Delta Faucet, a Delta fixtures kind of faucet on its airplanes as a Delta Airlines kind of faucet. You know what I'm saying? Well, it sounds... Here, you know, your client is using the SCAD marks to represent SCAD. Don't you think there's a difference there? I do not, Your Honor. It sounds ludicrous, but it's the exact same chronology we have in this case because sportswear, the district court found sportswear to be the prior user on apparel goods. And in addition, the plaintiff has not brought any evidence. Yeah, but it's a trademark for educational services, but your client is counting on customers understanding the association of that trademark with the college, which suggests some strength to the mark, right? I don't think that's correct. I think they brought no evidence at all to the case of strings. I think plaintiff is asking you to take judicial notice here of consumer perceptions about sponsorship. There's simply no basis in Federal Rule of Evidence 201 for such judicial notice of consumer perceptions about sponsorship. There was no evidence showing this alleged fact, and it's clearly objectionable to the defendant. And the summary judgment standard requires viewing facts in the light most favorable to defendants. They're asking you to take judicial notice that everyone understands schools sell T-shirts, but they're asking you to accept this with no evidence of the ultimate question. Schools also sell hamburgers and coffee and gum and restaurant services, and unless there's proof of prior use on such goods and services. Yeah, but they don't sell hamburgers that say SCAD on them. You know what I'm saying? It seems like a kind of different – it's a different kind of product. Your client is trying to make money off of the educational services and everything that goes with the name SCAD, right? Your Honor, they still have to come to the court with some proof of likelihood of confusion. They have to have some proof of – they have conceded there's no source confusion here, and so they switch – they change tax to talk about sponsorship confusion, which is a little thinner and broader type of confusion. But I'm not even sure that the district court ruled on the basis of sponsorship confusion. If you look at footnote 22, if I can find a cite to it, it says, both plaintiffs' claims turn on whether the defendant's use of similar or identical marks is likely to cause confusion as to the origin of the product. So it sounds to me like the district court was fighting based on source confusion, which they also had no evidence of, but they also have conceded there's no source confusion. And they have no evidence, on the one hand, of sponsorship-type confusion, and on the other hand, they have millions of – I'm sorry, not millions – thousands of documents in the record with webpages with disclaimers saying, we're not affiliated, it's not authorized, it's not approved on every page, and that usually takes care of the sponsorship confusion side of things. Well, I mean, there's case law that says that that doesn't actually take care of it, isn't there? Well, for sponsorship confusion, we have some briefing with websites that disclaimers actually do have a quite powerful effect. But the whole point is you have to come to the court with some evidence that this is creating confusion in the minds of consumers. Even if you don't come with a survey, which is what's typical in these cases, you have to come with some evidence that consumers might be confused or are confused. If I can address – there's a difficult question here I think that's important. Perhaps I can be helpful. There's the combination of the – what I'm calling the two-factor elevation. So it's a long-time 11th Circuit rule that the two most important factors in the likelihood of confusion analysis are the strength and weakness of the mark and the lack of actual confusion. The court didn't really focus on these or give them weight, but that's in our briefing. But we should acknowledge that a great many trademark cases don't involve evidence of actual confusion. Thus, the combination of this two-factor elevation and the Dieter presumption of strength in the likelihood of analysis creates a super powerful trademark once it gets an incontestable stamp. And this is doubly dangerous when the Dieter presumption is extended to highly dissimilar goods and services. If you elevate strength, the strength factor above all, and give that factor of presumption, it results in a finding of infringement despite a complete lack of proof of marketplace strength. You could have a very weak or descriptive mark that gains incontestable status. The consequence, which might be unintended, is that for a mark otherwise relatively weak, the trademark owner can hardly lose. In my Delta example, Delta Airlines could not get out of the infringement case on summary judgment under this law that's shown in the order here, the district court order. There are several reasons to consider an en banc review of Dieter. And most of those are the sovereign military case, just outlined very clearly and carefully what those reasons are. I want to add just two that I found in preparing here. One is that Dieter is not just out of step with the majority of circuits. Now it is out of step with every circuit. Counsel, telling us why the court should reconsider Dieter en banc is not helpful to a three-judge panel. Because there's nothing we can do about that. Thank you, Your Honor. That can only be resolved with a petition for rehearing en banc and a poll by the court after which a majority of the court votes to rehear the appeal en banc. There's just nothing that enables us to do anything about that as a panel. Yes, Your Honor. I'd like to address some of the district court's mishandling of the other likelihood of confusion factors. For example, the court in SCAD I instructed this court in SCAD I instructed the district court to, quote, assess the strength of the plaintiff's word mark. The district court did not follow those instructions. It did not give sufficient weight to the lack of actual confusion, nor did it consider that plaintiff has done nothing to prove any strength in its marks whatsoever. Indeed, the court found that there was little evidence of the extent of use of the mark and found that defendant had prior use on apparel goods. Even with the Dieter presumption, some proof of marketplace strength is required before the strength factor can be awarded in plaintiff's favor. Here, the district court found there was little to no evidence, but still counted the strength factor in plaintiff's favor. The district court also declined to engage in a protracted analysis of whether educational services were similar to apparel goods. This is another critical factor in the likelihood of confusion analysis. The extreme dissimilarity of education services and apparel goods should have weighed heavily in the court's favor, but the district court simply did not analyze the dissimilarity of the goods and services. This means the judge accepted plaintiff's factual allegations as true, and that is not the correct posture on summary judgment. Even if the plaintiff's marks are held to be strong, the defendant should still win here. I point to a case in the Federal Circuit of the University of Notre Dame, which was against a producer of gourmet food. In that case, the school mark, Notre Dame, was even found to be famous, which is far stronger than the mark here, and the school had proven use as a mark on lots of commercial items. The Federal Circuit still found that the difference between the goods and services precluded a finding of likelihood of confusion. In that case also, in the University of Notre Dame, the record was devoid of evidence on which to base a finding of likelihood of confusion, just as it is here. The district court also was required to apply the proper legal standard to the intent factor. The district court held that intent to copy equals intent to confuse, but I believe the cases show this is entirely incorrect. That is explained in the brief. I will not rehash that here. Here, when the plaintiff switched tax from source confusion to sponsorship confusion argument, in that case, disclaimers are particularly helpful in avoiding any perception of sponsorship confusion. Also, website disclaimers are different than product disclaimers. They are also more helpful in avoiding consumer perceptions of affiliation. Plaintiff is arguing that the defendant's intent to create sponsorship confusion when every page of the defendant's website has disclaimers. I don't have any more at this time, Your Honor. Splendid. Let's hear from your adversary. Well, I'm curious about this, Mr. Picanu, and that is, you brought a complaint. You sought damages, lost profits, and injunctive relief, attorney's fees, but you got a judgment that awarded you none of that. Why didn't you go back to the district judge and say, Your Honor, we haven't gotten a remedy yet? Well, Your Honor, our client's primary objective in this lawsuit was to get Sportswear to stop selling the infringing merchandise. Which would mean you would want an injunction, right? Well, Your Honor, we agree with Sportswear to the extent that we believe that this court's judgment has a preclusive effect between the parties on the issue of liability with respect to Sportswear's use. Of course, if they do something tomorrow that's different, that's really a new case or controversy that would have to then be adjudicated. And I guess your point is, you think that this judgment might, this is perhaps somewhat speculative, might have some preclusive effect for that to happen again. Well, Your Honor, I would point Your Honor to the Supreme Court's decision in B&B Hardware, which is cited actually in Sportswear's brief for a different proposition. In that case, the Supreme Court held that a finding of likelihood of confusion by the trademark trial on an appeal board would have collateral estoppel effect, offensive collateral estoppel in a pending trademark infringement litigation between the same parties. And, Your Honor, I think that the District Court's judgment sufficiently covers the use that Sportswear would make of scathe marks to believe that collateral estoppel would prevent them from resuming the uses. Okay. I guess your point is, you got what you really wanted, which was an advisory opinion almost, that this company violated your client's rights. Well, Your Honor, I wouldn't characterize it as an advisory opinion. I think that there was a... I hedged it. I said almost. It's a decision on liability with respect to Sportswear's uses of scathe marks. And we believe that has a preclusive effect that would prevent... You didn't seek a declaratory judgment, did you? We did not seek a declaratory judgment. Okay. What we should do is basically what you're asking us to do is effectively treat it as one. I don't know that I can fully concur with that characterization. I believe that the judgment has preclusive effect. If, for whatever reason, the Eleventh Circuit doesn't believe that it has preclusive effect, then I think the issue really is that it's not a final judgment at all, and the issue needs to be... So that's what I thought you might argue today, which is you requested relief that has been not determined, and therefore this isn't really a final order. Yeah, and there is some support for that, Your Honor. For example, the Supreme Court's decision in Liberty Mutual 424 U.S. 737, where there was a similar issue with respect to a decision in which the District Court did not address the relief that was requested. Yeah, the problem I had with it was that the District Court said, I would be totally with you on this point. Had the District Court not then written, this case is dismissed. What do I make of that? Well, I think there are decisions, including that Supreme Court's decision in Liberty Mutual, that suggests that the Court's use of that language is not dispositive on the question as to whether it's a final judgment. And so I don't believe that the Court's language... Well, the Supreme Court has said that a final order is one where there's nothing left for the District Court to do. And when the District Court enters an order that says this case is dismissed, I'm having a hard time understanding what else there is to do. And, Your Honor, in all candor, I think that's a fair reading. I think that the decision that I cited from the Supreme Court is at least arguably distinguishable on that grounds, because the District Court seemed to suggest that there was... Can I ask you a question about that, though? Doesn't that statement come from the case of Coopers and Libren, which involved an interlocutory order, specifically a class certification order? And after that, I mean, it was quoting... Coopers and Libren was quoting this other case that the statement came from. And after that order had been issued, of course, the case still wasn't over, because that was just a class certification order. So, I mean, I think that's why, in Chase Manhattan, the Seventh Circuit has said that you can't just look at that statement out of context, because it can be considered overbroad if you do that. So let me ask you this. Would it have been possible... Is there anything that prevents you from going back to the District Court and asking for an order either for damages on the findings or for a declaratory judgment or an injunction or anything of that nature? Your Honor, in all candor, I don't know... I don't stand here with a suggestion as to a mechanism that accomplishes that without... It would seem like the one you would ordinarily use would be you would go in and file a Rule 60B motion that's based on mistake. But the problem with that is there's a one-year time limit, and it's been more than a year since the judgment was entered. Excusable neglect in 60B. Is that why you say you can't really think of a mechanism? Yes, Your Honor. Is there an excusable neglect in 60B that you could resort to? Or is that subject... Is that the same subsection that's subject to a one-year time limit? But, counsel, on this point, I think Judge Rosenbaum was going... Well, I was going, but are we... Are you saying that this was a conscious decision, or was this just a mistake that the party... that you did not seek to have the judgment clarified or that you sought to recover any particular damages or attorney's fees? Was it just something that was missed, or was this a conscious decision not to seek, or do you know? Well, we were the counsel, so I acknowledge that we knew that the order was issued without awarding relief, and I think that's about all I can say about that. That's fair. I appreciate your candor. But if we were to find that there was no Article III standing, would it be your intention at that point to go back to the district court and seek specific relief? I don't know that we could do that. I think that if the court finds no standing, it leaves this case in limbo. So I believe that either the judgment clearly had a preclusive effect, in which case this court's decision in AgriPost is controlling on that issue, or if... But we don't have a judgment. We don't have a judgment. We have a dismissal. Yeah. I don't believe that's fair, Your Honor. I believe that there was a judgment as to liability on the claims in the case. There is an order entering summary judgment on the claims in the case. Right? Right. And then a final judgment. Yeah, but it also says this case is dismissed. Right? Right. So let me ask you a question, though. Your position is that this has a preclusive effect. If we concluded that it did not have a preclusive effect, then there would be no injury to Sportswear, I imagine, right? Is there some reason you can't conclude that it doesn't have a preclusive effect? I believe that the injury to Sportswear is the preclusive effect. So... Right. So that's what I'm asking you. Is there some... How is it a preclusive effect on Sportswear? What does it preclude Sportswear from doing in the future? There has been a judgment by the district court on the issue of likelihood of confusion arising from Sportswear using scasm marks on apparel and other related merchandise. Let me make a suggestion to you, Counsel, that I think might help you and your adversary that just occurred to me. The preclusive effect, if we don't get hung up in collateral estoppel concerns, I guess the preclusive effect is this. It has res judicata effect, right? That is, the parties can't go back and re-litigate this dispute. As to what happened retrospectively, you know, that was the subject of this dispute. That's been adjudicated. It at least has that preclusive effect. We don't have to speculate about that. The parties can't go back now and re-litigate whether what Sportswear did in the past that was the subject of this controversy violated and infringed on your client's trademarks. The court concluded that it did. Correct, Your Honor. Counsel, I've got my cheat sheet in front of me here, so I don't want to catch anybody off guard. But when I look at Rule 60, Relief from a Judgment or Order, Rule 60C refers to the timing. A motion under Rule 60B must be made within a reasonable time and for reasons 1, 2, and 3 no more than a year after the entry of judgment or order. But you would not be proceeding under either 1, 2, or 3. You would be proceeding under B6, any other reason that justifies relief. And that just refers to a motion must be made within a reasonable time. And the Rule 60A provides that corrections based on clerical mistakes, oversights, and omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, etc. So it seems to me that if we found that we did not have standing, you would have the remedy of going back to the district court within a reasonable time to correct that mistake. Do you want to do that? Yes, Your Honor, if that's what's being offered. So for that reason alone, there's jurisdiction here, there's standing. But even if you didn't do that, Judge Pryor's point is that if there were future litigation, and this litigation could be a relevant consideration in the future litigation to prove various historical points. And so it would have a race judicata effect on the issue that was raised that was the same from historical litigation. Right? Yes. All right, why don't we talk about the merits? Thank you, Your Honor. Our contention that the case for infringement here is straightforward. Sportswear used identical versions of SCAD's 40-year-old word marks together with other indicia related to our client with the express intent to benefit from the association of those marks with SCAD. That alone is sufficient to find a likelihood of confusion in the absence of other factors that mitigate against confusion. Your Honors, no such mitigating factors exist here. This isn't a case with competing First Amendment concerns as in this circuit's new life art decision involving the use of collegiate marks in paintings. This isn't a case where the association between the use and the mark owner was ambiguous. Sportswear concedes that consumers purchased its shirts to express affiliation with SCAD. And this isn't a case where Sportswear sold an innovative product beyond the ordinary boundaries of trademark law. It sold plain t-shirts with exact copies of SCAD's marks, and the marks are the only reason why anyone would buy those shirts. In addition, Sportswear's SCAD-branded apparel was visually indistinguishable from officially licensed merchandise The target customers for apparel were the same, current students and their proud parents, alumni and faculty, and fans of SCAD's athletic teams. And there is no evidence that the way in which Sportswear sells its apparel would obviate confusion as to an affiliation with SCAD. Sportswear's alleged errors do not provide a basis for overturning the district court's judgment, and that judgment should be affirmed. Your Honor, we've spent a lot of time talking about standings, and I have things I would like to say in response to Appellate's arguments, but I'd like to prioritize answering Your Honor's question. Tell me this. Do you think that the Dieter presumption here is really critical? Or would we still have to affirm even without that presumption? I don't think that the Dieter presumption is necessary for the district court's conclusion of the likelihood of confusion. Primarily, Your Honor, the evidence that makes abundantly clear that consumers purchasing SCAD-branded apparel from Sportswear's website would know that that apparel refers to our client. That's the question that's being answered by the strength factor of the likelihood of confusion analysis, and there's really no factual dispute whatsoever as to that question. The target audience for Sportswear's shirts are people who recognize SCAD's marks, current students and their parents, alumni and faculty, and fans of SCAD's athletic teams, and Sportswear concedes all of that. So it isn't true that proving the strength of a mark can only be done through various evidence of advertising expenditures and whatnot. The facts here demonstrate that the marks were strong enough, and strong enough is the appropriate question for purposes of likelihood of confusion. Any other questions? Go ahead. I don't want to cut you off. You have time remaining. Just turning to a couple of the things that Sportswear addressed. Their argument that Sportswear has to prove that, in fact, consumers would be confused is not the standard of this circuit or any other circuit. Actual confusion is not a necessary requirement for proving likelihood of confusion. Likelihood of confusion is the test. Especially whereas here we have inexpensive goods and a low volume of sales, less than 500 units over a five-year period, courts have made clear that the absence of actual confusion evidence is not significant in a case like this. Sportswear makes several points with respect to its disclaimer, but this circuit, in highly analogous situations, Boston Hockey and late, for example, have held that a disclaimer is wholly insufficient to obviate the confusion that would stem from the use of the marks in a context like this. Does the court have any other questions? I don't hear any. Okay. I won't repeat the arguments in my brief. I'll spare the court time. Thank you. We always appreciate counsel returning time back to us. It's our most precious resource.  Thank you, Your Honor. I want to go for a minute to the B design because that, I think, was kind of confusing in the briefing. I think the most important point there is that you can't have a trademark right of any sort if you're not using a mark. And they had set out an announcement that they were not using a mark. This is really kind of a new argument that was never addressed in opening that your adversary really never had an opportunity to address. And I'm not sure it's really proper rebuttal. Thank you, Your Honor. Mr. Picano says that the... There's no requirement to prove actual confusion, and that is correct. We have never disputed that. But there is a requirement to come forward with some evidence of likelihood of confusion, some evidence of sponsorship confusion, if that's their argument. And they can't just ask the court to take judicial notice of the main fact that they think consumers are likely to be confused. In their brief, they resort to a treatise argument, which McCarthy says something like, well, customers might intuit that, but that's not a legal fact. That's not argument supporting the case here. Even in the recent Supreme Court booking.com case, the court wrote an unyielding rule that entirely disregards consumer perception is incompatible with the bedrock principles of the Lanham Act. I would just like to conclude that it would be manifestly unfair if the Lanham Act, which was amended after Deter, is applied to defendant's case not as enacted and as existing since 1988, but as distorted. But regardless of that, it would be unjust to extend further the errors of Deter, as the district court did here, to unrelated goods and services and back in time. Justice requires that the court apply the full seven-factor test for likelihood of confusion case, not just a turbocharged strength factor without evidence of actual confusion. Here, we are requesting that the lower court ruling be reversed and summary judgment entered in favor of the defendant's courtswear. We also renew our request for a hearing en banc of Deter. And I have no further comments. Okay. Thank you, counsel. We have your case.